I, GASKINS, J.
The defendant, Shanmarcus A. Butler, was convicted by jury of armed robbery and attempted second degree murder. He was sentenced to serve 25 years at hard labor, without benefit of parole, probation, or suspension of sentence on the armed robbery conviction and 45 years at hard labor without benefit of parole, probation, or suspension of sentence on the conviction for attempted second degree murder, with the sentences to be served consecutively. He now appeals the convictions and sentences. We affirm.
FACTS
The victim, Emanuel Allen, III, worked the night shift in maintenance at an area casino and attended school during the day. On Sunday morning, March 11, 2001, Allen arose shortly before noon and went outside to warm-up his car, a 1975 blue Chevrolet Nova. He noticed a man on a little girl’s *935 bicycle who kept passing by, looking at him. Allen went into the house for a short period of time.
When Allen returned to the car, he sensed someone behind him. He turned and saw the bicycle rider pointing a black .38 gun at him. Allen stated that the assailant, whom he later identified in court as the defendant, was slim with a short haircut. The defendant forced Allen into the car, got into the passenger seat, and gave Allen instructions on where to drive.
They went to a BMX park where Allen refused the defendant’s order to get into the trunk. They then drove to the former AT & T plant, where the defendant again told Allen to get into the trunk. When Allen continued to refuse, the defendant shot him in the head. The bullet entered below and | ^behind the left ear and exited close to the corner of the right eye. Allen was able to see the defendant get into the car.
Frederick Lea was driving in the vicinity of the former AT & T plant when he observed a blue Chevrolet with chrome wheels back out in front of him at a high rate of speed. The car was driven by a young black man. Lea then saw Allen SO-BO feet off the road and thought that he had either been stabbed or shot. Lea went to Allen’s aid and observed that he was bleeding heavily and his right eye was out of the socket. Lea called 911 and Allen was taken to an area hospital.
The bicycle ridden by the defendant was retrieved at Allen’s home. The defendant’s fingerprints were found on the bicycle. It was later determined that the bicycle belonged to the defendant’s 11-year-old sister.
An investigation by the police revealed that the defendant had been seen riding his sister’s bicycle prior to this offense. One witness told police that the defendant had approached him with a bag of car stereos, seeking to make a sale.
Allen’s car was found abandoned in southern Caddo Parish, near the homes of some of the defendant’s relatives. The stereo and amplifiers were missing from the car.
A warrant for the defendant’s arrest was issued. He was apprehended in Tulsa, Oklahoma, and returned to Shreveport. The defendant was charged with armed robbery and attempted second degree murder. Following a jury trial, the defendant was convicted of both charges and was sentenced as specified above.
|sThe defendant timely filed motions for post verdict judgment of acquittal and new trial, alleging that his convictions were contrary to the law and evidence and that there was insufficient evidence to support his convictions. He also filed a motion to reconsider his sentences, alleging only ex-cessiveness. All three motions were denied by the trial court. The defendant then appealed, arguing insufficiency of the evidence and excessive sentence.
SUFFICIENCY OF THE EVIDENCE
The defendant contends that the evidence presented at trial was insufficient to support his convictions for armed robbery and attempted second degree murder. The defendant does not dispute that the offenses occurred, but argues that the evidence was insufficient to identify him as the person who committed the crimes.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, *936 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, units denied, 2000-3070 (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by |4viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Thornton, 36,757 (La.App.2d Cir.1/29/03), 836 So.2d 1235.
The court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. In the absence of an internal conflict with physical evidence, the testimony of one witness, if believed by the jury, is sufficient support for the requisite factual conclusion. State v. Clark, 33,794 (La.App.2d Cir.11/3/2000), 774 So.2d 291, unit denied, 2000-3511 (La.8/31/01), 795 So.2d 1209.
To convict a defendant of armed robbery, the state must prove: (1) the taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, 35,189 (La.App.2d Cir.10/31/01), 799 So.2d 684. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3).
IrTo convict a defendant of attempted second degree murder, the state must prove: (1) specific intent to kill and (2) the commission of an overt act tending toward the accomplishment of that goal. La. R.S. 14:27 and 14:30.1. Specific intent to kill may be inferred from a defendant’s act of pointing gun and firing it at a person. State v. Burns, 98-0602 (La.App. 1st Cir.2/19/99), 734 So.2d 693, unit denied, 99-0829 (La.9/24/99), 747 So.2d 1114.
In cases involving a defendant’s claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Burns, supra.
There are several factors for evaluating the reliability of an identification, including: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’ degree of attention, (3) the accuracy of the victim’s prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12.
Officer D.J. Wall of the Shreveport Police Department testified that he took crime scene photos where the carjacking began. He noticed a | fibicycle next to the *937 carport, which was included in the photos. However, at that point, he didn’t realize it had any evidentiary value.
Patrick Beverly, the victim’s brother-in-law, testified that when he arrived home after the incident he noticed a bicycle by the side of the house. It was the same one in the photo taken by Officer Wall. Mr. Beverly told detectives he had never seen the bike before.
Wendy Beverly, the victim’s sister, testified that the victim lived with her, her husband and their daughter. She testified that the bicycle was not at the house when she left for work that morning and said that it did not belong to her 13-year-old daughter.
Caddo Parish Sheriffs Deputy Jermaine Kelly testified that he responded to an abandoned vehicle call on the day of this incident in south Caddo Parish near the DeSoto Parish line. A blue, four-door 1975 Chevrolet Nova was found in a muddy area. The vehicle was impounded.
Amy Chrietzberg, a Shreveport Police Department crime scene investigator and fingerprint examiner, was accepted as an expert in fingerprint identification and analysis. She described the crime scene at the former AT & T plant. She examined the victim’s car and the bicycle at the impound bay.
Officer Chrietzberg explained how the automated fingerprint identification system (AFIS) works. She processed a number of prints from the bicycle. She matched a print from the bicycle to known prints of the defendant and to his prints taken on the day of the trial. On cross 17examination, she agreed she couldn’t state when the prints were made on the bike. The defendant’s prints didn’t match any found on the victim’s car.
During the early stage of the investigation, Officer Chrietzberg went to the hospital to get the victim’s prints. He had obvious facial injuries with bandages on his head. He looked at a photo lineup but couldn’t make any identification.
Matthew Contario, age 16, said he knew the defendant from the neighborhood. Contario suffered an extreme case of “memory loss,” totally forgetting a lengthy police interview in this matter. At trial, he admitted that the defendant had tried to sell him a car stereo in the past. The defendant had a bag full of stereos at that time. Contario had seen the defendant riding a bicycle at an unknown time.
Joseph Olsen, age 16, testified that he knew the defendant from the neighborhood. Olsen had seen the defendant riding a “little girl’s bike,” at some time several weeks before this incident. At trial, he identified the bicycle from a picture. However, Olsen remembered seeing the defendant on “plenty of bikes.”
The victim’s vehicle was found in an area close to a Keithville, Louisiana, neighborhood where.the defendant’s aunt, Frances McNeil, and his cousin, David McNeil, lived. Elizabeth Jackson testified that she lived close to the McNeils and saw the defendant back in the neighborhood in March 2001. She then saw pictures on television with a news item regarding this incident.
|sThe state called David McNeil, the defendant’s cousin, to question him about an interview Detective Tom Oster conducted with him. McNeil denied that the interview occurred, denied saying he saw the defendant on the date of this incident, and denied saying that the defendant had mud on his shoes on that date.
Detective Oster of the Shreveport Police Department testified that he picked up the bike at the victim’s house and transported it to the impound facility. He also had the victim’s car impounded. It had been stuck *938 in mud; the stereo system and amplifier were missing.
Prior to Detective Oster’s testimony concerning his interviews with Contario, Olsen, and McNeil, the court gave cautionary instructions regarding previous inconsistent statements of a witness. The jury was instructed that the testimony of a witness may be discredited by showing that the witness made a prior statement which contradicts or is inconsistent with his present testimony. The court further instructed that such prior statements are admitted only to attempt to discredit the witness, not to show that the statements are true. Detective Oster related the substance of his conversations with Contario, Olsen, and McNeil. Contario had told Oster that the defendant had a bag of car stereos a week before the incident and was trying to sell them. Contario said he saw the defendant on a bicycle on the day of this incident. Contario identified a picture of the bike the defendant had been riding on the day of this incident. He stated that the bicycle belonged to the defendant’s sister known as “Tooty.”
| aDavid McNeil told Oster that he saw the defendant on the day of this incident. The defendant had mud on his shoes. McNeil did not know how the defendant got to the neighborhood.
Oster described the photo lineup he made to show the victim while he was hospitalized. The photograph of the defendant then was different from his appearance in court. His hair at trial was in braids, and his moustache, goatee, and sideburns were thicker. When Oster showed the photos to Allen, Oster realized he couldn’t see well enough to view the lineup.
The defendant’s picture was placed in the media because the police had an arrest warrant and they had information that the defendant had left the area.[1] Deputy Ricky Johnson testified that he picked up the defendant in Tulsa, Oklahoma, on a warrant in October 2001, seven months after this incident.
The defendant’s younger sister told Detective Oster the bicycle in the photo was hers and it was taken from her yard on the weekend of March 10-11.
Dr. Lou Smith testified at trial about the victim’s medical condition after the shooting. Her testimony was relevant to confirm why the victim couldn’t identify anyone at the photo lineup. She stated that she treated the victim after the shooting. He had a bullet entry wound behind the left ear and an exit wound in the corner of the right eye. The right eye was popped out of its socket and the pupil was not reactive. A CT scan showed that the Imvictim had some bullet fragments in the front portion of the brain with some slight brain damage. The victim also suffered damage to the nerves of the left side of the face which interfered with moving the eyelid. The record shows that the victim lost his sight in the right eye and suffered damage to the vision in the left eye.
At trial, Shanedra Cash, the defendant’s sister, identified a picture of her bicycle and testified that it had been stolen at a date she couldn’t remember. On cross examination, she said that her nickname was “Tooty.”
Comonesha Butler, also the defendant’s sister, identified a picture of the bicycle at *939 trial and testified that it was stolen during “the beginning of’ March 2001.
The defendant argues that the only evidence against him is the fingerprint on the bicycle found at the victim’s home. He claims this is explainable because the bicycle belongs to his sister. He points out that it was stolen before this offense occurred. He contends that his fingerprints were not found on the car and he . was not found with any of the victim’s property. He notes that the victim was not able to pick him out of a photo lineup. The defendant argues that, even though he may have tried to sell car stereos in the past, that does not mean that he committed this offense.
The evidence is sufficient to support the conviction. The victim was in the presence of the defendant for approximately 15 to 20 minutes during the commission of the offense. While the victim was in the rehabilitation hospital shortly after the shooting, the police tried to show him a photo lineup. He said that he was “out of it” and had blurry vision. When shown l^the lineup, he could not make out the pictures. He said that he did not want to make an identification without being sure it was correct. The police never asked the victim to look at the photo lineup again after he got his glasses.
A picture of the defendant was published in the media sometime later. The victim was able to identify the defendant as the assailant from that photo. Although he was not able to see well from his left eye immediately after being shot, at trial the victim had glasses. The victim was “positive” of his in-court identification of the defendant as the person who took his car and shot him.
Further, the defendant was seen riding his sister’s bicycle close to the time of this offense and had tried to sell ear stereos from a bag to his friends. The stereo in the victim’s car was missing when it was recovered. The car was recovered soon after the offense, close to an area where some of the defendant’s relatives live, in a muddy area. Some of the relatives and a neighbor saw the defendant in their neighborhood on the day of the offense.
The evidence, viewed in the light most favorable to the prosecution, shows that the crimes charged were committed by the defendant. The defendant used armed force to take the victim’s car from him. The defendant also attempted to kill the victim by firing a bullet into his head. The victim was positive of his in-court identification of the defendant as the perpetrator. Allen had 15 to 20 minutes to observe his assailant and vividly recalled his face. The bicycle tends to corroborate the identification. The Injury believed the victim. Thus, the evidence is sufficient to support the convictions of the defendant for the charged offenses beyond a reasonable doubt. The defendant’s arguments to the contrary are without merit. The trial court correctly denied the motions for post verdict judgment of acquittal and new trial.
EXCESSIVE SENTENCE
On appeal, the defendant argues that his sentences are excessive, that the trial court erred in directing that the sentences be served consecutively, and that the trial court failed to adequately articulate reasons for the sentences, as required by La. C. Cr. P. art. 894.1.
The record reflects that the defendant timely filed a motion to reconsider sentence, which the trial court denied. However, in the motion, the defendant asserts only that his sentence is excessive. The defendant neither objected to the order that the sentences be served consecutively nor complained of failure to ade *940 quately articulate reasons for sentence under La. C. Cr. P. art. 894.1. Pursuant to La. C.- Cr. P. Art. 881.1, the failure to include a specific ground upon which a motion to reconsider sentence may be based precludes the defendant from raising the ground for relief on appeal. Thus, the defendant’s claim of sentencing error is limited to the issue of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Clark, supra.
A sentence is unconstitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless imposition of pain and suffering. State v. Lobato, 603 So.2d 739 (La.1992). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks our sense of justice. State v. Caraway, 28,769 (La.App.2d Cir.10/30/96), 682 So.2d 856, writ denied, 1999-2532 (La.2/18/2000), 754 So.2d 964; State v. Clark, supra. The sentence will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion to sentence within statutory limits. State v. Lobato, supra.
Prior to imposing sentence, the trial court conducted a hearing at which the victim’s sister, Wendy Beverly, testified concerning the impact of these offenses on the victim. The victim lost the sight in his right eye and suffered damage to the sight in the left eye. He had not been able to hold employment and he had constant headaches as well as persistent depression. He also had $20,000 in outstanding medical bills.
Detective Oster testified about his efforts to locate the defendant after the crimes were committed. He was told by people in the defendant’s neighborhood that the defendant said that he was saving a bullet for the detective.
Cathy Cash, the defendant’s mother, testified that the defendant hadn’t known his father, dropped out of school in the ninth grade, and was sent to juvenile boot camp for something she couldn’t remember. Ms. Cash said she had talked with the defendant about this incident and he told her “he didn’t do anything wrong.”
114The court gave extensive reasons for sentence. The court summarized the “tragic” facts of the case which led to “irreversible and permanent results” for the victim and the defendant. The victim lost the sight in his right eye and the vision in the left eye was impaired. There is also “a possibility of slight brain damage.”
The distinctive bicycle linked the defendant to the crimes. He was arrested on charges of false impersonation and carrying a concealed weapon in Oklahoma after domestic abuse allegations. The defendant was 19 years old at the time of these offenses. He had juvenile convictions for illegal possession of stolen property and for possession of controlled dangerous substances.
After being released from the Swanson Correctional Center for Youth and Rutherford House, the defendant absconded parole supervision. Before he absconded, he tested positive for cocaine, opiates and marijuana. He attended three schools, and had to repeat one grade due to excessive absenteeism. He also had a record of suspensions and disruptive behavior.
The court considered the defendant’s family situation and noted that he had a very loving mother. The defendant had fathered a child who was three years old at the time of sentencing. There was no evidence that the defendant had done anything to support the child.
*941 The court noted that the evidence supported the charges of conviction as well as showing that the defendant had committed a kidnapping. There was no evidence that the defendant had expressed any remorse for what he did. The court was concerned that from the time of the carjacking until the | isattempted murder, the defendant intended to kill the victim because the defendant did nothing to conceal his identity. The court said “it is hard for me to imagine any attempted second degree murder more atrocious than this one.” Thus, the offense manifested deliberate cruelty and resulted in significant permanent injury. The court found that the defendant contemplated that his criminal conduct would cause serious injury. There was no indication of acting under strong provocation. There were no grounds tending to excuse or justify the criminal conduct, the goal of which was to obtain the victim’s car stereo. The only mitigating factor was the defendant’s youth.
In support of its decision to run the sentences consecutively, the court said the crimes went on for a period of time which was “excruciating for the victim in all respects.” The court held that “this is a set of felony crimes which cries out for consecutive sentences.”
The only issue properly before this court is constitutional excessiveness. The sentences imposed are legal and are less than the statutory máximums. The victim is severely and permanently disabled. The sentences are not grossly disproportionate to the severity of the offense. The defendant, with a record of larcenous offenses, intended to take the life of a human being just to steal a mere car stereo. He then showed absolutely no remorse. Under these circumstances, the sentences are not shocking to the sense of justice and are tailored to the offender and the offenses. We find that the sentences are not unconstitutionally excessive.
| ^CONCLUSION
For the reasons stated above, we affirm the convictions and sentences of the defendant, Shanmarcus A. Butler.
AFFIRMED.

. Evidence of flight indicates a defendant’s consciousness of guilt and is a circumstance from which a jury may infer guilt. State v. Davies, 350 So.2d 586 (La.1977); State v. Brown, 24,840 (La.App.2d Cir.5/5/93), 618 So.2d 629, writ denied, 93-1449 (La.9/24/93), 624 So.2d 1222.