927 So.2d 670 (2006)
STATE of Louisiana, Appellee
v.
Don MORRISON, Appellant.
No. 40,852-KA.
Court of Appeal of Louisiana, Second Circuit.
April 12, 2006.
*671 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, Louis G. Scott, for Appellant.
*672 Jerry L. Jones, District Attorney, Charles L. Brumfield, E. Dion Young, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and GASKINS, JJ.
STEWART, J.
The defendant, Don Morrison, was found guilty as charged of two counts of indecent behavior with a juvenile. He was given consecutive sentences of three and one-half years at hard labor on count one and two years at hard labor on count two. In this out-of-time appeal, he argues that the evidence was not sufficient to support the convictions and that the sentences were excessive. For the reasons stated herein, we affirm his convictions and sentences.

FACTS
Count one of the grand jury indictment charged the defendant with indecent behavior with C.J., a juvenile, occurring between January 1, 1994 and December 11, 1997. Count two charged the defendant with indecent behavior with W.H., a juvenile, occurring between June 1, 1999 and August 31, 1999. The matter proceeded to a jury trial.
C.J., who was 21 years old at the time of the trial, testified that she met the defendant when she was in a fourth grade special education class at Southside Elementary School. She testified that she received a bike from the defendant for her good behavior in class. He also gave her cash and a watch. When C.J. was 13, she started going to the Dodson Park Gym (hereafter referred to as the "gym"), with her siblings and friends. Morrison, who was a supervisor at the gym, asked C.J. to help out with cleaning the gym at closing time. Her mother agreed, provided that the defendant drove C.J. home in the evenings.
According to C.J., she and the defendant began having sexual intercourse three to four times a week while she was working at the gym. She was 13 or 14 years old when it began. She testified that they had sex in a room on the gym's second floor, in the weight room, and at Morrison's house. She testified that they would be alone at closing time in the gym when the sex occurred. The defendant continued to give her gifts, usually cash. C.J. testified that the sexual activity continued until she became pregnant. She turned 17 years old on December 11, 1997, and gave birth to a child on September 14, 1998. The defendant signed an acknowledgment of paternity after taking a blood test, and he began paying child support.
C.J. stated that she did not tell anyone, even her twin sister, about her sexual encounters with the defendant. According to C.J., the defendant told her that she would be sorry and would not be believed if she told anyone about them. C.J. stated that she later told her cousin Dorothy Atkins, who then told C.J.'s mother. C.J. was afraid to tell her mother.
Responding to the accusation that she was pursuing the criminal matter for money, C.J. admitted that she filed a civil suit against the defendant and the City of Bastrop. She explained that she was told by others that the defendant needed to pay for what he had done, and she agreed.
Rosalee Hicks, C.J.'s mother, testified that she allowed her daughters to go the gym, because she trusted the defendant to properly supervise them. She stated that she tried to question C.J. about the father of the child once she learned of C.J.s pregnancy. She did not learn that Morrison fathered the child until after the birth. She then called the district attorney for help.
*673 Jeffery Toms, a support enforcement officer, testified that Morrison, C.J., and the baby submitted to blood tests and that Morrison signed an acknowledgment of paternity thereafter.
W.H., who was 18 years old at the time of trial, testified that she met the defendant at the age of 10 when she attended Southside Elementary. She had friends who were special education students, and she visited them in the classroom in which the defendant worked. At age 11 or 12, she began working at the gym where she sold concessions and worked the shot clock. She was paid cash until she turned 13, at which time the city began paying her by check. She was positive that the defendant began having sexual intercourse with her prior to the age of 13 while she was still being paid in cash for working at the gym.
W.H. testified that the defendant gave her money and gifts, such as a radio and Easter baskets, when she was in elementary school and working at the gym. He gave her larger sums of cash as she got older. She stated that when he began giving her gifts, he told her that she would pay him back in the long run. She did not know what he meant until he started having sex with her. She believed that the gifts were to keep her quiet. W.H. testified that she tried to resist by telling him to stop and saying that she did not want to do it. The defendant told her that she did not have to worry about anyone finding out as long as she did not tell.
W.H. testified that she frequently had sex with the defendant during the summer of 1999, the period to which the charges pertain. She stated that the sex occurred mainly at the gym when the defendant would send her to check the second floor and then follow behind her. When this occurred, the other supervisor, Prince Whitmore, was either checking the lower floor or had left prior to closing time. However, W.H. also claimed to have had sex with the defendant at his house, in his vehicle, and outside.
W.H. admitted that she lied to the police when interviewed in March 2000. She told the officer who interviewed her that the defendant had only tried to touch her. She explained that she was embarrassed and afraid. Also, her mother had been in the hospital, and she did not want to hurt her. She denied that she had been influenced by anyone to change her story. Rather, it was brought to her attention that she was the only one who could tell the truth about what happened to her, and she had gained enough confidence to tell the truth and no longer be embarrassed. She stated she had "no reason to lie about some man penetrating [her] as a little girl."
In response to W.H.'s testimony, the defense called Rodney Jones, a detective with the Bastrop Police Department. Jones interviewed W.H. on March 21, 2000. He testified that W.H. denied having had sex with Morrison at his house and claimed that they had sexual intercourse only one time. As the state's rebuttal witness, Jones testified that the defendant was interviewed three times and each time denied having had sex with the victims.
The defense also presented the testimony of Beverly Ray, her daughter Lakeisha, and Reginald Winston to establish that the defendant bought snacks for many children at the gym. The Rays testified that the defendant often brought C.J. home from the gym at the same time as the Ray girls. Prince Whitmore, a supervisor at the gym with the defendant, testified that he never saw the defendant leave for long periods of time with a young female when closing the gym. However, Whitmore did not always work the same days as the defendant.
*674 The defendant, Don Morrison, insisted that he did not commit the offenses. He claimed that both victims were lying. He asserted that W.H. was mad at him for once having told her mother that she left the gym without permission. He also asserted that C.J. was trying to get money from a civil suit and that she was mad at him for having once called her mother to report that she was in the weight room with a young man whom her mother did not want her to see. He claimed that C.J. did not return to the gym after that incident. C.J. admitted the incident happened when she was around 15 and that she was mad at Morrison at the time. Both C.J. and her mother testified that she resumed going to the gym after a week or two.
Having testified that C.J. had quit going to the gym sometime around 1994 when the weight room incident occurred, the defendant claimed that C.J. arrived at his house after she turned 17 and took advantage of him while he was drinking alcohol to ease the tragedy of his mother-in-law's death. The defendant also testified that he denied the accusations when interviewed by the police, because the interviewer kept referring to what he allegedly did as abuse. He refused to admit to abusing anyone.
After hearing the testimony, the jury found the defendant guilty as charged on both counts of indecent behavior with a juvenile, and he was sentenced as related above. The defendant eventually filed this out-of-time appeal to challenge the sufficiency of the evidence and the excessiveness of the sentences.

DISCUSSION

Sufficiency of the Evidence
The defendant asserts that the evidence was insufficient to convict him of either count. Noting that C.J. gave birth to the baby on September 14, 1998, he claims there was no evidence to show that the baby was full term and that the evidence did not establish that he had sex with C.J. prior to her seventeenth birthday on December 11, 1997. Although C.J. and W.H. made similar allegations of sexual abuse, the defendant argues that their claims were refuted by the testimony of other witnesses showing that he did not have the opportunity to be alone with the victims in order for sex to have occurred as often as they claimed.
To convict a defendant of indecent behavior with a juvenile, the state must prove that the defendant: (1) committed any lewd or lascivious act upon the person or in the presence of any child under the age of 17; (2) was over the age of 17 and more than 2 years older that the victim; and (3) had the intention of arousing or gratifying the sexual desires of either person. La. R.S. 14:81. Specific intent to commit the offense of indecent behavior with a juvenile need not be proven as fact; rather, it may be inferred from the circumstances and actions of the defendant. State v. Wade, 39,797 (La.App.2d Cir.8/9/05), 908 So.2d 1220.
Appellate review of a sufficiency of the evidence claim requires us to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard applies in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most *675 favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). The reviewing court accords great deference to the judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Wade, supra; State v. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. White, 28,095 (La. App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048. In cases involving sexual assault, the testimony of the victim alone is sufficient to convict even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Wade, supra.
The victims, C.J. and W.H., were not the same age and testified that they did not know each other well. Notably, they gave similar testimony about the defendant's pattern of seducing young girls. Both testified that they met the defendant while they were students at Southside Elementary. Both testified that he gave them gifts, including cash, before beginning a sexual relationship with them and continued to do so. Both testified to engaging in sexual intercourse with the defendant in the same places, namely the second floor of the gym and in his home. Both testified that sex usually took place when they were closing the gym for the evening.
The defendant denied the allegations and asserted that both girls were lying. However, the minor incidents he referred to as reasons for the victims's untruthfulness seem to have occurred well before the investigation into the defendant's illicit actions began. Moreover, the possibility that the defendant may have had sexual intercourse with C.J. on an occasion after her seventeenth birthday does not refute her claim that he had been having sexual intercourse with her throughout the preceding years.
The jury could have reasonably discredited the defendant's self-serving testimony and found his assertions implausible. Also, the jury could have reasonably determined that the defense witnesses, Beverly Ray, Lakeisha Ray, and Prince Whitmore, were not privy to every instance that C.J. or W.H. may have been alone with the defendant and that their testimony did not raise reasonable doubt as to the truthfulness of the victims' testimonies. The members of the jury listened to the witnesses' testimony and assessed their credibility. By finding the defendant guilty as charged on both counts, the jury rejected the testimony of the defendant and his witnesses. It is the jury's discretion to accept or reject the testimony of a witness in whole or in part, and this court will not second-guess that exercise of discretion.
A rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that all the elements of the offense of indecency with a juvenile were proven as to each count. *676 See Jackson v. Virginia, supra; State v. Bosley, supra. The jury could have reasonably believed the testimony of the victims, which included striking similarities in describing the defendant's actions over a period of years as he groomed for seduction and took sexual advantage of two young girls over whom he exercised the role of a seemingly benevolent authority figure. The jury, as trier of fact, chose to believe both victims' testimony, and their testimony alone is sufficient support for the requisite factual conclusions. State v. White, supra.
Accordingly, we find no merit to this assignment of error and affirm the defendant's convictions.

Excessive Sentence
The defendant contends that because he is a true first-time offender with a steady work history, the sentences are excessive. He seeks remand for re-sentencing. The state contends that the sentences are not out of proportion to the seriousness of the offenses, not an abuse of the trial court's discretion, and not excessive.
Because the defendant failed to timely file a La. C. Cr. P. art. 881.1 motion to reconsider sentence, his claim is relegated to review for constitutional excessiveness. State v. Duncan, 30,453 (La. App.2d Cir.2/25/98), 707 So.2d 164. This review turns upon whether the sentence is illegal or grossly disproportionate to the severity of the offense. State v. Lobato, 603 So.2d 739 (La.1992). A sentence is considered grossly disproportionate when, after viewing the crime and punishment in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
A trial judge has broad discretion to sentence within the statutory limits, and the sentence should not be set aside absent a showing of manifest abuse of that discretion. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158. La. R.S. 14:81(C) states "the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both...."
The trial court sentenced the defendant to three and one-half years at hard labor for count one and two years at hard labor for count two. The sentences are to run consecutively. The sentences are lawful and are less than half of what the trial court could have imposed under the statute. Although the defendant is a first offender with a steady work history and supporters in his community, the sentences do not shock the sense of justice. His actions caused irreparable harm. He abused his position as a school and city employee to victimize two young women. At the time the offenses occurred, the victims were in their mid-teens and the defendant was in his mid to late forties. We note that both victims testified that the molestation began at a younger age in both cases. There is no showing that the trial court abused its discretion in imposing consecutive sentences totaling five and one-half years. Under the circumstances, the sentences are not grossly disproportionate to the severity of the offenses, do not shock the sense of justice, and are not excessive. This assignment is without merit.

CONCLUSION
For the reasons expressed, the defendant's convictions and sentences are affirmed.
AFFIRMED.