974 So.2d 173 (2008)
STATE of Louisiana, Appellee,
v.
Sheila E. JENKINS, Appellant.
No. 42,897-KA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
*174 Peggy Sullivan, Louisiana Appellate Project, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, C. Sherburne Sentell, III, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, J.
The defendant, Sheila E. Jenkins, was convicted of second degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. She now appeals. The defendant's conviction and sentence are affirmed.

FACTS
The defendant and the victim, Henry Jackson, both worked at Yount's Appliance Store in Minden, Louisiana. They were also romantically involved. On December 29, 2005, the victim was heard yelling and cursing outside of the appliance store. Witnesses who were in the tobacco store next door could not initially see another person involved in the argument. However, one witness saw that he was talking on a cell phone. A green truck driven by the defendant turned into the parking lot at a fast speed, and accelerated toward the victim. The victim tried to avoid being hit by the vehicle, but, according to the witnesses, the defendant swerved to hit him. After impact, the victim fell to the ground and hit his head on the pavement.
The victim was transported to Minden Medical Center where he was stabilized before being transported to LSUMC, the regional trauma center. Several days later, the victim died as a result of his head injuries.
The defendant was indicted on a charge of second degree murder. Following a jury trial, she was found guilty as charged and sentenced to the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
The defendant now appeals her conviction.

*175 LAW
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. The reviewing court accords great deference to the judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Morrison, 40,852 (La. App.2d Cir.4/12/06), 927 So.2d 670.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual conclusion. State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35.
Specific intent is a state of mind and need not be proved as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Taylor, 621 So.2d 141 (La.App. 2d Cir.1993), writ denied, 93-2054 (La.2/11/94), 634 So.2d 371; State v. Dorsey, 41,418 (La.App.2d Cir.9/20/06), 939 So.2d 608, writ denied, 2006-2686 (La.6/1/07), 957 So.2d 174. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Brown, 618 So.2d 629 (La.App. 2d Cir.1993), writ denied, 624 So.2d 1222 (La. 1993).
Second degree murder is "the killing of a human being: (1) When the offender has a specific intent' to kill or to inflict great bodily harm." La. R.S. 14:30.1.

EVIDENCE
Two employees from the tobacco store located next to Yount's testified that they could hear the victim outside "cussing and screaming." According to the female witness, the victim yelled, "I don't need this s . F  her." The male witness testified that the victim said, "F  you, bitch. I don't need this s ." From her vantage *176 point, the female witness was able to see that the victim was talking on a cell phone. Both eyewitnesses testified that the green truck entered the parking lot and accelerated. Both were steadfast in their testimony that the defendant swerved to hit the victim with the truck. Then the truck stopped. The female witness testified that she heard the brakes slammed on after the impact. The male witness testified that he was in a position to see the rear brake lights; they did not come on until after the truck hit the victim.
The eyewitnesses stated that the victim appeared to have been hit by the right front side of the truck. The female witness thought that he had been struck around the leg area; the male witness believed that he was hit in the chest or abdomen. A police officer on the scene testified that the victim was bleeding from the back of the head. The detective assigned to the case stated that it appeared the victim had been hit by the rearview mirror on the passenger side of the truck.
The female witness testified that after the incident she heard the defendant make several different, contradictory statements about what happened: "He jumped out in front of me"; "I don't know who was driving my truck"; and "My brakes went out." According to the first police officer to arrive on the scene, the defendant initially said she didn't see the victim and that she accidentally hit her boyfriend. When she was in the back seat of a patrol car, she also made statements that the brakes probably went out and that she thought the victim was "playing" once he was hit. She also told the officer that she and the victim had argued the day before because he was jealous of her "sugar daddy."
The detective who investigated the incident testified that the defendant recounted leaving the victim, who was her boyfriend, in the parking lot while she went nearby to meet her "sugar daddy."[1] She told the detective that when she returned to the parking lot, the victim was "playing around" and "jumping around"; when the truck hit him, she thought he was still "just playing."
The doctor who treated the victim at the Minden hospital and the Webster parish coroner both testified about the victim's injuries. He sustained a large laceration to the back of head and ultimately died of cranial cerebral trauma. The defense questioned these witnesses about whether the victim had injuries to the legs or torso; the eyewitnesses to the incident had indicated that the truck possibly struck the victim in these areas. According to the emergency room doctor, the victim had some abrasions to the trunk, the sacrum and the right hip.
The defendant presented the testimony of the tow truck driver who removed the truck from the crime scene. He stated that he noticed the brake pedal "drift[ing] slowly to the floor" when he moved the vehicle. He testified that he mentioned this to one of the police officers; the officer did not recall the statement. When the detective called the tow truck driver two weeks later, he told the detective that the brakes were not out but there was a problem.
The owner of the truck testified that about a week before the incident, he had the brakes worked on. After the truck was returned following the incident, he noticed a problem with the brakes "going down." He had a new master cylinder installed. The defendant's father also testified *177 that after the incident, he had to pump the brakes to stop the truck.
In rebuttal, the state called the owner of the auto repair center where the truck was examined on January 3, 2006, at the owner's request. He stated that the brakes were "a little spongy," like they had air in them. He determined that the master cylinder needed to be replaced. However, he testified that a normal driver would have been able to stop the truck. He also noted that when a driver applies the brakes, the brake lights come on; the master cylinder has nothing to do with the lights.
Also testifying for the state was the owner of the auto repair center who had repaired the brakes on December 22, 2005; he examined the truck again on January 3, 2006. He testified that there was no problem with the brakes after he worked on them; however, he said a master cylinder can go out at any time. As to his examination of the truck after the incident, he characterized the brakes as having a "little bit of a sponge to the pedal." Nonetheless, he testified that the vehicle would still stop. He also stated that when the brake lights come on is a good indicator of when the brakes are applied.
Also testifying for the defendant was a female coworker who stated that the defendant and the victim had a loving relationship and that they had just become engaged. However, after admitting that she did not know that the defendant had a "sugar daddy," she conceded that she might not have known as much about the defendant and victim's relationship as she thought.

DISCUSSION
The defendant argues the state failed to prove she had the requisite intent to kill or inflict great bodily harm and that the incident was an accident mainly attributed to the faulty brakes on the truck she was driving. The state contends that the record supports the defendant's conviction as it presented sufficient evidence to satisfy all elements of the charged offense.
Viewing the evidence in the light most favorable to the prosecution, we find that the state presented sufficient evidence to convict the defendant of second degree murder. Based on the eyewitnesses' testimony, the state established that the victim was heard yelling and cursing loudly into his cell phone., and shortly thereafter, the defendant was seen driving a truck into the parking lot where the victim was standing. The defendant was traveling at a rate of speed greater than would be normal for a parking lot. Upon seeing the truck moving toward him, the victim attempted to avoid being hit, but the defendant accelerated and swerved toward the victim, striking him with the vehicle. After the victim was hit by the truck, he fell to the ground and struck his head on the pavement, causing the fatal injury. The brake lights did not come on until after the truck hit the victim, indicating that the defendant did not brake before that point. Notably, the truck did not hit the building. Had the brakes not been working, the defendant would have struck the building after entering the parking lot at an accelerated speed.
The evidence presented by the state, through the testimony of the two eyewitnesses, was sufficient to establish that the defendant's actions in driving the truck into the parking lot and striking the victim were intentional. The jury was provided with ample testimony and evidence from which it could infer that the defendant  by her actions of accelerating, swerving, and then hitting the victim  intended to kill or inflict great bodily harm against the victim. Factual conclusions reached by this jury based on credibility determinations of *178 the witnesses should not be disturbed by this reviewing court.
Even considering the minor inconsistencies in the eyewitnesses' testimony regarding which part of the truck actually struck the victim and which part of his body was impacted, the state met its burden of proof in this case. The jury, after being presented with the defendant's theory, apparently chose to disbelieve her assertions that the vehicle she was driving had faulty brakes or that there was some other type of mechanical failure. This determination by the jury is reasonable in light of the fact that the mechanics who worked on the truck before and `after the incident indicated that it was possible for the truck to stop despite any problem that may have been present at that time.
This assignment of error is without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] When the detective asked for clarification, she said that her "sugar daddy" was a man who bought her "various things." (Additional testimony during the trial revealed that this man also owned the green truck.)