Judgment rendered February 25, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,782-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                  Appellee

versus

SIRELDERICK DEON HAYS            Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 382,230

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPEALS AND            Counsel for Appellant
WRIT SERVICE
By: Remy Starns
      Holli Ann Herrle-Castillo

JAMES E. STEWART, SR.             Counsel for Appellee
District Attorney

VICTORIA T. WASHINGTON
Assistant District Attorney

MORRIS & DEWETT, LLC
By: Eric Matthew Whitehead

* * * * *

Before ROBINSON, HUNTER, and ELLENDER, JJ.

**ROBINSON, J.**

SirElderick Deon Hays ("Hays") was charged by indictment on July 21, 2021, with one count of second degree murder in violation of La. R.S. 14:30.1, one count of armed robbery in violation of La. R.S. 14:64, and one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. A jury trial was held March 11-12, 2025. Hays was found guilty of the responsive verdict of manslaughter in violation of La. R.S. 14:30.1 and guilty as charged of armed robbery and possession of a firearm by a convicted felon.

Hays filed motions for post verdict judgment of acquittal and for new trial on April 11, 2025, which were denied. On April 16, 2025, the trial court sentenced Hays to 40 years at hard labor for manslaughter, 75 years at hard labor without benefits for armed robbery, and 15 years at hard labor plus a $5,000 fine for felon in possession of a firearm, all to be served consecutively. On April 17, 2025, the defense filed a motion to reconsider the sentence, which was denied without a hearing. Hays filed a motion for appeal on May 2, 2025, which was granted.

For the reasons set forth below, we AFFIRM the convictions and sentences.

## FACTUAL BACKGROUND

On March 31, 2021, Xavier Griffin ("Griffin") met up with Tyree Marshall ("Marshall") and a juvenile male at the Lakeside Gardens Apartments complex on Marion Street in Shreveport. Griffin brought his new AR rifle with him saying he wanted to shoot it. The group went to a bridge at the apartment complex where Griffin fired the weapon. Another male approached Griffin and asked to hold the rifle. Griffin hesitantly let

him hold it, but the man began to walk away with the rifle, stating "this bitch is took," while holding his own handgun. The group backed up, but then Griffin argued with the man and fought over the weapon. A single gunshot was fired and the shooter fled with both firearms. Griffin was pronounced deceased at the scene.

Marshall remained at the scene until officers arrived and made a statement recounting the events. He mentioned to the investigating officers that he had been drinking and had smoked marijuana, but that he felt fine. Multiple officers testified that Marshall did not appear intoxicated.

No firearms were ever retrieved, but three casings of different calibers were located at or near the scene. One casing was recovered in the area where Griffin was shot. The casings were all sent for testing or comparison. Forensic firearms examiner Phillip Stout testified that he was provided with three fired cartridge cases to test: a 9 mm, a .40 caliber, and a .223 caliber. He advised that the different calibers of cartridge cases were not compared to each other since there was no reason to believe a particular caliber was fired in a different caliber weapon. He also testified that the 9 mm casing was matched to a 9 mm Taurus pistol recovered in an unrelated shooting through a national database for fired cartridge cases.

Video footage from the apartment complex's surveillance cameras was obtained the day after the incident. Officer Saiz, of the Shreveport Police Department, testified as to the events captured in the footage, which were consistent with Marshall's statement on scene. Four individuals can be seen on the video, tracked camera-by-camera as they walked through the complex, believed by officers to be Griffin, Marshall, the shooter, and the minor teenager. The video was not detailed to the point facial features could

be recognized, but the barrel of the AR rifle could be seen in the right hand side of Griffin's jacket. Some of the struggle between Griffin and the shooter over the gun was captured on video, but the two had moved mostly out of view when the shot was fired. Griffin had lunged for his rifle and the two fought back and forth. The footage showed the shooter's posture with his elbow out in a position to shoot and Griffin bent over with his head at waist level, at the time the other individuals reacted to the gunshot.

The autopsy revealed that Griffin died as the result of a gunshot wound to the neck that severed his aorta and perforated his right lung. Based on the ring of soot around the entrance wound, the muzzle of the firearm was approximately one to two inches from the skin when fired. The findings were consistent with Marshall's statement and the video footage.

A Crime Stoppers tip was received shortly after the incident that provided a potential name of the shooter. Nothing was found after an initial search of the records management system, so a search of only the last name provided was run through a database of misdemeanor crimes, which resulted in the discovery of a name that was similar in spelling to the one provided by the Crime Stoppers tip as well as a physical description consistent with that provided by Marshall. The individual from the search had also previously committed a crime similar to the current offense. The name obtained was provided to the Louisiana Fusion Center to obtain a six-person photo array.

At that point, Marshall was brought back in for a recorded interview. He was presented with the photo lineup and identified the individual whose name had been obtained through the Crime Stoppers tip and resulting database searches. Marshall stated that he was "20 out of 10" sure that the

man identified in the lineup was the one who killed Griffin. The man identified was Sirelderick Deon Hays.

During his trial testimony, Marshall stated that he was not comfortable answering questions concerning Hays' identification because it had been four years since the incident and he was doing drugs at the time, so he did not remember who all had been present the evening of the shooting or how many officers he had spoken to that night. However, Marshall admitted talking to detectives and positively identified himself in the video of his interview and acknowledged a piece of paper in front of him in the video in which he had identified Hays as the perpetrator.

## DISCUSSION

### *Sufficiency of Evidence*

The standard for appellate review for a sufficiency of the evidence claim is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 248 (2004); *State v. Cummings*, 95-1377 (La. 2/28/96), 668 So. 2d 1132; *State v. Crossley*, 48,149 (La. App. 2 Cir. 6/26/13), 117 So. 3d 585, *writ denied*, 13-1798 (La. 2/14/14), 132 So. 3d 410; *State v. Murray*, 36,137 (La. App. 2 Cir. 8/29/02), 827 So. 2d 488, *writ denied*, 02-2634 (La. 9/5/03), 852 So. 2d 1020. This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. McGehee*, 15-2140 (La.

4

6/29/17), 223 So. 3d 1136; *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So. 2d 1165.

An appellate court neither assesses credibility nor reweighs evidence and great deference must be given to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Carr*, 55,692 (La. App. 2 Cir. 5/22/24), 387 So. 3d 886, *writ denied*, 24-00776 (La. 2/28/25), 402 So. 3d 486; *State v. Myrick*, 54,606 (La. App. 2 Cir. 9/21/22), 349 So. 3d 92; *State v. Eason*, 43,788 (La. App. 2 Cir. 2/25/09), 3 So. 3d 685, *writ denied*, 09-0725 (La. 12/11/09), 23 So. 3d 913; *State v. Morrison*, 40,852 (La. App. 2 Cir. 4/12/06), 927 So. 2d 670. The jury's reasonable credibility determination is not to be second-guessed on a *Jackson* sufficiency of the evidence review. *State v. Marshall*, 04-3139 (La. 11/29/06), 943 So. 2d 362, *cert. denied*, 552 U.S. 905, 128 S. Ct. 239, 169 L. Ed. 2d 179 (2007). However, a reviewing court may impinge on a trier of fact's discretion to the extent necessary to guarantee the fundamental due process of law. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000); *State v. Turner*, 51,228 (La. App. 2 Cir. 04/05/17); 217 So. 3d 601; *State v. Woodard*, 47, 286 (La. App. 2 Cir. 10/3/12), 107 So. 3d 70, *writ denied*, 12-2371 (La. 4/26/13), 112 So. 3d 837.

When the issue raised in a sufficiency claim is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. *State v. Mathis*, 52,500 (La. App. 2 Cir. 1/16/19), 263 So. 3d 613. However, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is

5

sufficient to support a requisite factual conclusion. *State v. Fussell*, 55,497 (La. App. 2 Cir. 2/28/24), 381 So. 3d 899; *Myrick, supra*; *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35. The Louisiana Supreme Court held in *State v. Dorsey*, 10-0216 (La. 9/7/11), 74 So. 3d 603, as follows:

> A positive identification by only one witness is sufficient to support a conviction. A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the factfinder beyond the constitutional standard of sufficiency. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the factfinder, is sufficient support for a requisite factual conclusion.

Hays claims that the State failed to prove beyond a reasonable doubt who shot Griffin. He argues that the evidence was insufficient to establish his identity as the perpetrator of the offenses, because it did not negate every reasonable hypothesis of misidentification. Hays points out that the only eyewitness refused to implicate Hays at trial, claiming he could not remember what happened the night of the shooting because he was under the influence of drugs and alcohol. Hays asserts that Marshall's own testimony that he was strongly under the influence the night of the shooting indicated the possibility that he misidentified the perpetrator, a reasonable probability that the State failed to negate. Hays, therefore, claims that no rational trier of fact could have found the State proved the identity of the appellant as the perpetrator, and the evidence was insufficient to uphold the conviction.

The State argues that any rational trier of fact would find that the State proved the identity of Hays as the perpetrator of the offenses. It claims that Marshall's testimony regarding his use of drugs or alcohol at the time of the

6

crimes is a credibility determination that is prohibited from disturbance on appeal.

Marshall made statements to officers the night of the shooting as well as shortly after in a recorded interview, recounting the events and identifying Hays as the shooter. His accounts were consistent with the evidence presented consisting of surveillance camera footage, casings found at the scene, the autopsy findings, and the Crime Stoppers tip. When presented with a double-blind photo lineup in his police interview, Marshall circled the photo of Hays as the perpetrator and signed his name next to the circled photo. When asked how positive he was that the circled individual was the shooter, on a scale of 1 to 10, Marshall responded, "20 out of 10." This was consistent with Marshall's statement in his first interview, "I know exactly what that [person] looked like. I know exactly what he looked like." Marshall also identified the shooter by his nickname, "Goop," which was confirmed through investigation to be the nickname of Hays.

Marshall was uncooperative in his testimony at trial, claiming he was uncomfortable identifying anyone because he could not currently remember the details of the incident. However, the only contradiction in his testimony from his statements four years prior was the extent of his intoxication the night the crimes were committed. Marshall never actually contradicted his statements regarding his accounts of the events surrounding the shooting, nor his identification of Hays that evening.

Marshall's previous statements were consistent with the evidence presented in the way of surveillance camera footage, casings found at the scene, the autopsy findings, and the Crime Stoppers tip, were sufficient to support the jury's factual conclusion that Hays was the shooter. The jury

7

made a credibility determination pertaining to the truthfulness of Marshall's earlier statements. Considering the consistency of his statements with other evidence presented in the case, as well as the fact that he did not recant the statements concerning his accounts or his identification of Hays, there is no basis to disturb the jury's credibility determination and the resulting finding that Hays was the perpetrator.

***Excessive Sentence***

Hays argues that the sentences imposed were excessive since they were not only maximum or near-maximum for each offense, but the resulting consecutive sentences resulted in an overall sentence of 130 years when the offenses arose from a single scheme. He argues that the sentences as imposed individually, and as imposed consecutively, are nothing more than the needless imposition of pain and suffering. Hays claims that the trial court overlooked the mitigating factors in La. C. Cr. P. art. 894.1 that he showed remorse at sentencing and that the jury found a mitigating factor when they returned the responsive manslaughter verdict. He also claims that the trial court improperly found that he had no ability to be rehabilitated, because he was in his early twenties and only had one prior conviction.

However, the State asserts that because Hays neither objected to the order that the sentences be served consecutively nor complained of the court's failure to adequately articulate reasons for the sentences per La. C. Cr. P. art. 894.1, he is precluded from raising those issues and his sentencing claims are limited to a bare constitutional excessiveness review. Per La. C. Cr. P. art. 881.1, an appellant must file a motion to reconsider and set forth the specific grounds upon which the motion is based in order to raise an objection to the sentence on appeal. The State also refers to this Court's

8

holding in *State v. Butler*, 37,226 (La. App. 2 Cir. 6/25/03), 850 So. 2d 932, particularly applicable to this matter:

> The record reflects that the defendant timely filed a motion to reconsider sentence, which the trial court denied. However, in the motion, the defendant asserts only that his sentence is excessive. The defendant neither objected to the order that the sentences be served consecutively nor complained of failure to adequately articulate reasons for sentence under La. C. Cr. P. art. 894.1. Pursuant to La. C. Cr. P. art. 881. l, the failure to include a specific ground upon which a motion to reconsider sentence may be based precludes the defendant from raising the ground for relief on appeal. Thus, the defendant's claim of sentencing error is limited to the issue of constitutional excessiveness.

We agree with the State and find that Hays' sentencing claim is limited to constitutional excessiveness review.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Kennon*, 19-0998 (La. 9/9/20), 340 So. 3d 881; *State v. Johnson*, 97-1906 (La. 3/4/98), 706 So. 2d 672; *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307; *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Scott*, 50,920 (La. App. 2 Cir. 11/16/16), 209 So. 3d 248, *writ denied*, 17-0353 (La. 11/13/17), 229 So. 3d 478; *State v. Modisette*, 50,846 (La. App. 2 Cir. 9/28/16), 207 So. 3d 1108. As a general rule, maximum or near-maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d

9

665; *State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053.

Trial courts have wide discretion in the imposition of sentences within the statutory limits, and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Gaines*, 54,383 (La. App. 2 Cir. 2/22/23), 358 So. 3d 194, *writ denied*, 23-00363 (La. 6/21/23), 362 So. 3d 428; *State v. Jeter*, 56,386 (La. App. 2 Cir. 8/27/25), 419 So. 3d 438. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Bell*, *supra*; *State v. Burns*, 53,920 (La. App. 2 Cir. 6/30/21), 322 So. 3d 928, *writ denied*, 21-01112 (La. 11/23/21), 328 So. 3d 78.

Hays was a convicted felon on probation for a previous violent robbery and was prohibited from possessing firearms. He robbed Griffin of his rifle while in possession of his own firearm, both of which he was prohibited from possessing, fatally shot Griffin during the robbery, and fled the scene with the stolen firearm. There was no evidence of any provocation. Maximum sentences for manslaughter and felon in possession of a firearm would be justified. Hays received less than the maximum sentence of 99 years for a robbery that resulted in the shooting and death of the victim.

Although the application of the La. C. Cr. P. art. 894.1 factors is not at issue on review, the court's thorough examination thereof supports the justification for the sentences. The trial court also noted that Hays could have easily been convicted of the charged offense of second degree murder based on the evidence presented at trial and benefited from the reduced sentence of the responsive verdict of manslaughter. The fact that evidence might have supported a verdict of second degree murder is an appropriate sentencing consideration when the defendant has been convicted of the lesser offense of manslaughter. *State v. White*, 48,788 (La. App. 2 Cir. 2/26/14), 136 So. 3d 280, *writ denied*, 14-0603 (La. 10/24/14), 151 So. 3d 599. Therefore, although Hays received a maximum sentence for manslaughter, the fact that he could have been subject to a much greater sentence for second degree murder is supportive of the sentence.

The trial court's imposition of the sentence was not shocking to the sense of justice nor a needless infliction of pain and suffering, and it was not an abuse of its discretion. Accordingly, Hays' sentences are not constitutionally excessive.

## CONCLUSION

For the reasons stated hereinabove, Hays' convictions and sentences are hereby AFFIRMED.

11